UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                     :

RAMESH KADIYAM, et al.,              :

                      :

          Plaintiffs,         :

                      :       26-cv-2989 (LJL)

     -v-                  :

                      :     MEMORANDUM AND

UNITED HOMES GROUP, INC., et al.,   :        ORDER

                      :

         Defendants.       :

                      :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Julie A. DiMare ("DiMare") moves, pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3)(B), for an order appointing her lead plaintiff to pursue a securities class action lawsuit against United Homes Group, Inc. ("United Homes"), Michael Nieri ("Nieri"), John G. Micenko, Jr. ("Micenko"), and Keith Feldman ("Feldman" and, with Nieri and Micenko, the "Individual Defendants"). Dkt. No. 15. DiMare also requests that her retained counsel, Glancy Prongay Wolke & Rotter LLP ("Glancy Prongay") be appointed class counsel for the putative class. *Id.* For the reasons that follow, the motion to appoint DiMare as lead plaintiff and Glancy Prongay as class counsel is granted.

## BACKGROUND

This case arises from allegedly false and misleading statements made by defendant United Homes between May 19, 2025 and February 22, 2026. Dkt. No. 5 (the "Complaint" or "Compl.") ¶ 1. United Homes is a residential home building company founded by Nieri, who also served as its Chief Executive Officer and whose family, as of April 22, 2025, held 79% of the voting power of the common equity. *Id.* ¶¶ 2, 18, 22. Micenko has been the company's CEO

since May 19, 2025, *id.* ¶ 19, and Feldman was the company's Chief Financial Officer at all relevant times, *id.* ¶ 20.

On May 19, 2025, at the beginning of the putative class period, the Company issued a press release announcing that the Board of Directors appointed a "special committee . . . comprised solely of independent directors" who "initiated a review of strategic alternatives in order to explore ways to maximize shareholder value" including "a sale of the Company, a sale of assets, and a refinancing of existing indebtedness, among others." *Id.* ¶ 23. On August 7, 2025, the Company announced a decrease in 10% of closed homes year over year and stated that it was undertaking a strategic review to "maximize shareholder value." *Id.* ¶ 24. The next day, it submitted its quarterly report on Form 10-Q filed with the SEC, which affirmed the Company's previously reported financial results and that the Company was conducting the strategic review to maximize shareholder value. *Id.* ¶ 25. The Form 10-Q also alleged that the Company maintained effective internal disclosure controls and procedures and that the Company's exploration and pursuit of strategic alternatives might not be successful. *Id.* ¶ 26. Plaintiffs allege that the Company failed to disclose that (1) Nieri secretly intended to force a sale of the company; (2) Nieri was taking actions to devalue the Company and its financial condition; (3) Nieri leveraged his controlling interest to effectuate that sale, including by effectively forcing the dissident directors to resign; and (4) that as a result, Nieri was not acting in the best interest of the Company and its public investors. *Id.* ¶ 28.

On October 20, 2025, before the market opened, United Homes filed a report on Form 8-K with the United States Securities and Exchange Commission announcing the outcome of the Special Committee review and that the entire board, except Nieri, had threatened to resign unless the Company's "existing management team was fully empowered to execute the Company's

2

strategic plan" and "Mr. Nieri stepped down." *Id.* ¶ 29.  It revealed that Nieri did not agree, and so six of the seven board members resigned.  *Id.*  The stock price fell on the announcement of the news.  *Id.* ¶ 30.  On November 6, 2025, United Homes announced that it had closed on even fewer homes than previously expected, amounting to a decrease of 23% year over year.  *Id.* ¶ 31.  It maintained, however, that "continuing to execute on the Company's strategic plan as an independent, public company is in the best interest of the Company and its stockholders at this time." *Id.*  The stock price fell on that announcement, and the quarterly report filed the next day confirmed those financial results.  *Id.* ¶¶ 32–33.

The truth fully emerged on February 23, 2026, when United Homes announced that it had agreed to become a fully owned subsidiary of Stanley Martin Homes, LLC in an all-cash transaction, cashing out all stockholders for consideration of $1.18 per share.  *Id.* ¶ 37.  On the last trading day preceding the announcement, the stock price of United Homes closed at $2.38.  *Id.*  On the news of the agreement with Stanley Martin Homes, the price of United Homes' stock fell to $1.23 a share.  *Id.* ¶ 38.

## PROCEDURAL HISTORY

This case was initiated by complaint filed on April 13, 2026, by Ramesh Kadiyam.  Dkt. No. 5.  On April 10, 2026, notice was published on Business Wire regarding the filing of this action and the deadline for filing a motion to serve as lead plaintiff.  Dkt. No. 14-3.  On June 9, 2026, Dan Kiepura moved to be appointed lead plaintiff, and for his counsel to be appointed class counsel.  Dkt. Nos. 12–14.  The same day, DiMare moved to serve as lead plaintiff, and to appoint Glancy Prongay as class counsel.  Dkt. Nos. 15–17.  Additionally, Dylan Santeramo moved to serve as lead plaintiff, and for his counsel to serve as class counsel.  Dkt. Nos. 18–21.  On June 22, 2026, Dylan Santeramo withdrew his motion to serve as lead plaintiff.  Dkt. No. 28.  On June 23, Dan Kiepura withdrew his motion to serve as lead plaintiff.  Dkt. No. 32.

3

## LEGAL STANDARD

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws.  First, it requires any prospective lead plaintiff to file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa); *id.* § 78u–4(a)(3)(A)(i).  Next, the PSLRA lays out standards for choosing one lead plaintiff from among the candidates who file motions.  The PSLRA provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice [of the complaint within sixty days of the publication of this notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [("FRCP")].

*Id.* § 78u–4(a)(3)(B)(iii)(I).  Once the Court identifies a presumptive lead plaintiff, this presumption:

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. § 78u–4(a)(3)(B)(iii)(II).  "If the Court finds that the plaintiff with the largest financial interest in the class action is otherwise ineligible for appointment as lead plaintiff, the Court applies the criteria of the PSLRA to the plaintiff with the second-highest financial interest." *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *2 (S.D.N.Y. June 12, 2020).  The investigation continues in that fashion until the Court identifies a suitable lead plaintiff.  *See,*

4

*e.g., Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008).

For purposes of choosing a lead plaintiff under the PSLRA, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23 [of the FRCP], and courts need only consider the typicality and adequacy requirements." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018). Movants can demonstrate typicality by showing that their claims "arise from the same conduct from which the other class members' claims and injuries arise." *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002). Movants can demonstrate adequacy if they "(1) [have] no conflict of interest with the other members of the class, (2) [have] sufficient interest in the outcome of the case, and (3) [have] selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Aude*, 2018 WL 1634872, at *4. "The Court's determination of adequacy and typicality for purposes of appointing a lead plaintiff is not preclusive of a later challenge at the class certification stage with respect to those factors." *Cohen*, 2020 WL 3127808, at *2 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015)).

Finally, the PSLRA provides that, "[e]xcept as the court may otherwise permit, . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi).

**DISCUSSION**

**I.    Lead Plaintiff**

DiMare filed her motion for appointment as lead plaintiff on June 9, 2026—within the sixty-day window for filing that followed the notice on April 10, 2026. Dkt. No. 15; *see* Dkt. No. 17-1 (press release). She has attested that she has reviewed the complaint and is willing to

serve as a representative of the class.  Dkt. No. 17-2 ¶¶ 2, 4.  She has not served as a representative party on behalf of a class in any action under any federal securities law in the last three years.  *Id.* ¶ 6.  Additionally, it is uncontested that DiMare has the largest financial interest in the relief sought by the class.  She and her family purchased United Homes securities during the class period at prices alleged to be artificially inflated by the Defendants' misstatements and as a result suffered financial losses of $106,505.05.  Dkt. No. 17-3.

DiMare's claims also satisfy, for the purposes of the motion to appoint a lead plaintiff, a prima facie showing of typicality and adequacy under Federal Rule of Civil Procedure 23.  *See Manchin v. PACS Grp., Inc.*, 2025 WL 460775, at *3 (S.D.N.Y. Feb. 11, 2025).  That is, her claims are typical of the claims of the class.  Like the other class members, she alleges that the Defendants' material misstatements and omissions concerning United Homes' business, operations, and financial prospects violated the federal securities laws.  She, like the other class members, purchased United Homes securities on the basis of those misstatements and omissions, and was damaged as a result.  Dkt. No. 16 at 8.  In sum, her injury is "of the same kind, and arises out of the same facts, as that of other class members."  *Cohen*, 2020 WL 3127808, at *6.  DiMare is also an adequate representative, in that she has retained experienced counsel, *see* Dkt. No. 17-4, and has sufficient financial losses to ensure that she has an incentive to provide vigorous advocacy.  *See Lipetz v. Wachovia Corp.*, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (Sullivan, J.) (observing that a party having "a substantial financial stake in the litigation . . . leads the Court to believe that as lead plaintiff, [the party] would prosecute the claim vigorously").  There is no indication that DiMare has interests that are antagonistic to other class members.  *See Rauch v. Vale*, 378 F. Supp. 3d 198, 210 (E.D.N.Y. 2019).

The Court appoints DiMare as the lead plaintiff.

## II.    Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see, e.g., In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (same).

DiMare has selected Glancy Prongay, a firm experienced in securities class actions, Dkt. No. 17-4, to serve as class counsel.  The firm has represented investors, consumers and employees for over 35 years; has offices in New York City, as well as in California; and has been appointed as lead or co-lead counsel in many securities class action lawsuits. *Id.*  The record provides a basis to believe the firm will adequately represent the class.  The Court appoints Glancy Prongay as class counsel.

## CONCLUSION

DiMare's motion to be appointed a lead plaintiff and for Glancy Prongay to be appointed as class counsel is GRANTED.  The Clerk of Court is respectfully requested to close Dkt. Nos. 12, 15, and 18.

SO ORDERED.

Dated: June 29, 2026
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge

7